### WEBB et al. v. PARKER et al.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. ARBITRATION AND AWARD (§ 20*)—CONTRACTS—CONSTRUCTION.

Three arbitration agreements and agreements subsequent thereto between a husband and wife, on the one side, and a firm of stock brokers, on the other, construed, and *held* to require the arbitrator merely to find the amounts due the adverse parties on the different accounts involved, and to determine whether the brokers, in erroneously transferring credits to wrong accounts, did so "without fault on their part," and to require the wife on demand to offset claims found in favor of the brokers against her husband against claims found in her favor against the brokers.

[Ed. Note.—For other cases, see Arbitration and Award, Dec. Dig. § 20.*]

2. SPECIFIC PERFORMANCE (§ 80*)—AGREEMENTS ENFORCEABLE—ARBITRATION AGREEMENTS.

Where, by an arbitration agreement, one of the parties thereto agreed to offset claims found in favor of the adverse party against her husband, against claims found in her favor against the adverse party, her agreement could be specifically enforced in equity.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 214; Dec. Dig. & 80.*]

3. ATTORNEY AND CLIENT (§ 191*)—FEES—LIENS—ARBITRATION AGREEMENTS—EFFECT OF SET-OFFS—"SPECIAL PROCEEDINGS."

Code Civ. Proc. § 66, provides that, from the commencement of any action or special proceeding, an attorney has a lien upon his client's cause of action, claim, or counterclaim which attaches to a verdict, record, decision, judgment, or final order in his client's favor, and the proceedings thereof in whosesoever hands they may come, and that the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lien cannot be affected by any settlement between the parties before or after the final order. *Held,* that statutory arbitration being made by Code Civ. Proc. c. 17, special proceedings within the purview of section 66, an attorney's lien for fees on a specified portion of awards in favor of his client in statutory arbitration proceedings was not affected by the fact that the arbitration agreement provided for the setting off of awards recovered by each against the other, unless the attorney was a party to or consented to the agreement for the set-off of awards, since an attorney's lien is superior to the right of parties to set off judgments recovered by them respectively against each other.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 418–422; Dec. Dig. § 191.*

For other definitions, see Words and Phrases, vol. 7, pp. 6586–6590; vol. 8, pp. 7802–7803.]

4. ATTORNEY AND CLIENT (§ 191*) — FEES—LIENS—ARBITRATION AGREEMENTS— EFFECT OF SET-OFF.

The fact that a party to an arbitration agreement, providing for the setting off of awards found, did not know of an arrangement between the adverse party and his attorney as to the attorney's lien for fees, and that the attorney of the adverse party did not notify him of the existence of any claim or lien held against his client on the amount of the awards found in favor of his client, does not affect the attorney's right to enforce his lien before the setting off of the awards.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 418–422; Dec. Dig. § 191.*]

5. ATTORNEY AND CLIENT (§ 192*)—FEES—LIEN—ENFORCEMENT OF—AWARDS IN FAVOR OF CLIENT.

Where, as a result of arbitration proceedings, awards are made for and against each of the parties to the proceedings, which by the terms of the agreement are to be set off against each other, the attorney for one of the parties must resort to his client in the first instance for the payment of his agreed compensation, and, while the award in favor of his client against the adverse party will stand as security for the payment of that compensation until the attorney's claim is satisfied, he cannot compel the adverse party to pay him until he has exhausted his remedy against his client, or has shown that she is insolvent, and that it would be useless to pursue his claim againt her.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 192.*]

Appeal from Special Term, New York County.

Action by F. Egerton Webb and another against Susan Day Parker and another. From a judgment for plaintiffs, defendants appeal. Modified.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

W. W. Mumford, for appellants.

Henry L. Sprague, for respondents.

SCOTT, J. This is an action in equity to set off awards in separate statutory arbitrations. The plaintiff has been successful below, and the appeal comes to us upon the judgment roll alone; none of the evidence taken before the court being returned.

There is no dispute as to the facts. In the year 1904, Susan Day Parker and her husband, Dr. Chas. T. Parker, entered into three arbitration agreements with the plaintiffs, a firm of stock brokers, as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

First. Between Mrs. Parker and the plaintiffs respecting $50,000 of Union Pacific bonds which plaintiffs had at one time held for Mrs. Parker, but which they had sold and had credited the proceeds to their general account with Dr. Parker. This transfer had been made by direction of Dr. Parker, and Mrs. Parker claimed that she was not bound thereby. Plaintiffs claimed that she was bound. This account was known as "Susan Day Parker Trust Account."

Second. Between Mrs. Parker and plaintiffs respecting an account known as the "Dr. C. T. Parker special account," concerning which it was contended by Mrs. Parker that she was the real party in interest, and that certain transactions appearing therein had not been authorized by her or Dr. Parker. The balance standing to the credit of this account had been transferred to the general account of Dr. Parker, and it was contended by Mrs. Parker that this transfer had been made without her knowledge or consent, and contrary to the direction given by Dr. C. T. Parker, whereby she claimed that she had been wrongfully deprived of such balance, and was entitled to be repaid the same. The plaintiffs controverted these claims.

Third. Between Dr. Chas. T. Parker and the plaintiffs respecting an account carried by the latter, known as the "C. T. Parker general account," as to which Dr. Parker disputed his liability for certain transactions set out in the account. It was to this account that certain credit balances had been transferred, claimed to belong to Mrs. Parker, and which constituted the subjects of the two arbitrations to which she was a party. The only questions submitted to the arbitrator respecting this account were: (a) Which, if any, of the disputed transactions, were binding upon Dr. Parker; and (b) whether the plaintiffs had negligently and improperly failed to carry out any orders given to them by Dr. Parker.

An examination and comparison of the several submissions shows that there appeared to the credit of Dr. Parker, in his so-called general account, certain sums which were claimed by Mrs. Parker, and which she contended should not have been placed to Dr. Parker's credit, and should be repaid to her, while, on the other hand, the general account of Dr. Parker, including these transfers to the credit side, was accepted as accurate, excepting as to certain charges therein against Dr. Parker which were disputed. It was therefore perfectly possible that the first two submissions might result, as they did, in substantial awards in favor of Mrs. Parker for moneys improperly transferred to Dr. Parker's credit in his general account, while, owing to the restricted nature of the submission respecting that general account, the arbitrator would be unable to strike from its credit side the amounts improperly placed there because they belonged to Mrs. Parker. Thus, plaintiffs might be mulcted in a large sum in favor of Mrs. Parker, without being entitled to charge it back to Dr. Parker, to whose credit it had been placed. To meet this state of affairs, the parties, on June 19, 1905, nearly two years before the arbitrator made his two awards, entered into a supplementary agreement, reciting the foregoing submissions and modifying them in some particulars. The

important clauses, so far as concerns this controversy, were the following:

"(c) Should the arbitrator in any particular determine in favor of Mrs. Parker against Webb & Prall in the special account or in the trust account, then the arbitrator shall treat the sum or sums so determined as an offset or deduction against Dr. Parker in his said account (the general account) and in favor of Webb & Prall, but only in case the arbitrator shall determine that a sum corresponding to the sum or sums so determined in favor of Mrs. Parker, shall have been entered in said Dr. Parker's account (that is the so-called general account) without fraud or wrongdoing on the part of Webb & Prall or Mr. Speir or either of them, to the credit of Dr. Parker and less such claims or damages which Dr. Parker may be able to establish in such account, by reason of fraud or wrongdoing on the part of Webb & Prall or of Mr. Speir or of either of them.

"(d) Any final determination by the arbitrator in favor of Webb & Prall against Dr. Parker, shall constitute an offset, pro tanto, in their favor against any determination in favor of Mrs. Parker against Webb & Prall; and on the assignment by Webb & Prall of any sum finally determined in their favor against Dr. Parker to Mrs. Parker, or to such person as Mrs. Parker may name, she will satisfy, pro tanto, any sum determined in her favor against Webb & Prall. The intention of this clause being that Mrs. Parker shall have the right to enforce against Webb & Prall the amount of any sum determined by the arbitrator in her favor, which shall be in excess of the offsets or deductions, if any, determined by the arbitrator in favor of Webb & Prall and against Dr. Parker, as above provided in clause (c)."

It will be perceived that, of the two clauses above quoted, that one designated as "c" was intended to control the action of the arbitrator, and to add to his power by permitting him to determine whether the credits transferred to Dr. Parker's general account, from the accounts belonging to Mrs. Parker, had been so transferred without fraud or wrongdoing on the part of plaintiffs or Mr. Speir, and, if so, to deduct such credits from Dr. Parker's general account. The clause designated as "d" had no bearing upon the acts of the arbitrator, but was an independent agreement, outside of the arbitration, as to what should be done between the parties after the arbitrator had made his award. In other words, the arbitrator had nothing to do with any offset. He was to determine what was due as between plaintiffs and Mrs. Parker, and plaintiffs and Dr. Parker. When that had been determined, the parties to the arbitration agreed between themselves how and under what conditions the awards should be offset. The arbitrator fulfilled with exactness the duties devolved upon him, as well by the original submissions, as by the supplementary agreement from which we have quoted. He made three awards, one upon each submission. They were all made upon the same day and should be read together and in the light of the above quoted clause "c" of the supplementary agreement. He found in Mrs. Parker's favor upon the submission respecting the so-called "trust account," and the "Dr. C. T. Parker special account," awarding her, as against the plaintiffs, the sum of $55,750 with interest, with regard to the trust account, and $170,914.96 with interest, with regard to the "Dr. C. T. Parker special account," and as to each of these sums he finds that they had been transferred to the credit of Dr. C. T. Parker in his so-called general account, and that such transfers were made "without fraud or

wrongdoing on the part of Webb & Prall, or of Mr. Speir, or of either of them."

With respect to the submission concerning the "Dr. C. T. Parker general account," he found that there had been erroneously credited to that account by Webb & Prall, "but without fraud or wrongdoing on their part, or on the part of Mr. Speir, or either of them," the sum of $226,664.96 from the "C. T. Parker special account" (which included the proceeds of the $50,000 of bonds embraced in the trust account), which sum belonged to Susan Day Parker, and not to Dr. Parker, and was not transferred by her authority or with her consent. He decided therefore that the general account should be corrected by eliminating from the credit side thereof the said item of $226,664.96, and thereupon decided and awarded that that sum was due to plaintiffs from Dr. C. T. Parker upon said general account. With the making of these awards there was presented the precise situation for which the parties had provided in their supplementary agreement of June 19, 1905. The arbitrator had decided in favor of Mrs. Parker as against Webb & Prall in the aggregate to the amount of $226,664.-96, with interest, and in favor of Webb & Prall as against Dr. Parker in a like sum, also with interest. He had found that the sum had been erroneously transferred from Mrs. Parker's accounts to the credit of Dr. C. T. Parker's special account "without fraud or wrongdoing on the part of Webb & Prall, or of Mr. Speir, or of either of them," and he had treated that amount as an offset or deduction against Dr. Parker in his general account.

Under these circumstances, Mrs. Parker had agreed by clause "d" of the supplemental agreement of June 19, 1905, that the determination in favor of Webb & Prall against Dr. Parker should constitute an offset pro tanto in their favor against any determination in favor of Mrs. Parker against Webb & Prall, and that on the assignment by Webb & Prall to Mrs. Parker of any sum finally determined in their favor against Dr. Parker, or to such person as Mrs. Parker may name, she would satisfy pro tanto any sum determined in her favor against Webb & Prall. It is this agreement which the plaintiffs seek to compel Mrs. Parker to specifically perform. They have tendered to her an assignment of the award in their favor against Dr. C. T. Parker, together with a sum in cash representing the difference in interest in her favor upon the several awards.

The judgment from which this appeal is taken requires Mrs. Parker, upon the receipt of the assignment of the award against Dr. Parker, and the sum representing the difference in interest, to satisfy the awards in her favor against the plaintiffs, and perpetually enjoins her from entering judgment upon the awards in her favor against the plaintiffs. We think that (save for a consideration to be alluded to hereafter) this judgment was entirely right. It was the clear and obvious intention of the parties that it was the awards made by the arbitrator which were to be offset, and not the judgments to be entered upon those awards. This the parties were entirely competent to contract for. It is true that the Code of Civil Procedure contemplates and provides that an award may be attacked only in the manner and for the

reasons therein prescribed, and that, in the absence of successful attack, the party in whose favor an award is made shall be entitled to enter judgment thereon; but the parties are competent to agree among themselves, as we think that they have agreed in the present case, that a judgment shall not be entered, or that one award shall be set off against another and a judgment entered only for the difference. The plaintiffs are not attempting to attack the awards, but accept them, and, so accepting seek to enforce the separate and independent agreement between themselves and Mrs. Parker.

It would serve no good purpose to follow the counsel for the appellant Parker through the argument by which it is sought to convince us that the arbitrator misapprehended his duties under the submission. As has already been said, he followed the terms of the submission with careful exactitude. It was not committed to him to offset the claims in favor of Mrs. Parker against those against Dr. Parker. To have done so would have exceeded his authority and have vitiated his award. His duty was to ascertain certain facts and award as to them. Having done this, the duty of offsetting fell upon Mrs. Parker, who had agreed so to do it. That duty it is within the powers of a court of equity to enforce. We find a difficulty, however, arising from the lien of the defendant Norton, who was the attorney for Mrs. Parker. The court below has found as matter of fact:

"That the defendant Eliot Norton has a lien for his fees as attorney on the awards made in favor of his client, the defendant Parker, to the amount of 25 per cent. thereof, but any arrangement in respect thereto between himself and his client was known to him at the time the agreements of arbitration were made between the plaintiff and the defendant Susan Day Parker, and there is no proof or evidence that the plaintiffs knew of said arrangement in respect to his fees and lien on said awards, or that the defendant Norton notified the plaintiffs of the existence of any claim or lien he held against his client and the awards made to her which was inconsistent with the offsetting of said awards under the terms of said agreements or arbitration."

And has concluded therein as matter of law:

"That the claim of the defendant Norton for 25 per cent. of the awards made in favor of his client, the defendant Parker, is subordinate and subject to the carrying out of the agreement between the plaintiffs and the defendant Parker, dated June 19, 1905."

The above finding of fact has not been excepted to by any one, but the above-quoted conclusion of law has been excepted to by the defendant Norton.

Section 66 of the Code of Civil Procedure provides that:

"From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order."

Statutory arbitrations, such as these were, are special proceedings, being provided for in chapter 17 of the Code of Civil Procedure, which has for its title, "Certain Special Proceedings Instituted Without

Writ." They therefore fall within the purview of section 66 of the Code. The set-off contemplated by the supplemental agreement of June 19, 1905, would effectually defeat the attorney's lien in the present case, because it would prevent the entry of any judgment in Mrs. Parker's favor to which the lien could attach. It is not found as a fact, and does not appear on the face of the instrument itself, that the attorney was a party to or consented to the agreement of June 19, 1905, which provided for a set-off of awards, or that he has in any way waived his lien or consented to subordinate it to the off-set agreement. It is well settled that an attorney's lien is superior to the right of the parties to set off judgments recovered by them respectively against each other (Smith v. Cayuga Lake Cement Co., 107 App. Div. 524, 95 N. Y. Supp. ·236; Agricultural Ins. Co. v. Smith, 112 App. Div. 840, 98 N. Y. Supp. 347); the reason being that the set-off will destroy the judgment to which the lien has attached. So the right to a lien, which, as the statute says, cannot be affected by any settlement between the parties before or after judgment, is superior to the right of the parties to agree to set off one judgment or award against another, when the effect of such a set-off will be to prevent the entry of a judgment to which the lien might attach. The fact found by the court below "that there is no proof or evidence that the plaintiffs knew of said arrangement as to the attorney's fees and lien on said awards, or that the defendant Norton notified the plaintiffs of the existence of any claim or lien he held against his client," is wholly immaterial.

In Peri v. N. Y. C. R. R. Co., 152 N. Y. 521, 46 N. E. 849, the defendant had settled with the plaintiff, after judgment, without the knowledge of the plaintiff's attorney. A motion was made to vacate the satisfaction of the judgment in order to enable the plaintiff's attorney to enforce his lien. It was contended, in opposition, that, while the statute gives an attorney a lien for his fees and disbursements upon a judgment, he can protect himself only by notice to the defendant, or at least to his attorney of record. The Court of Appeals pointed out that such was the rule prior to the amendment of section 66 of the Code in 1879, but said respecting the effect of that amendment:

"The language is very comprehensive and creates a lien in favor of the attorney on his client's cause of action, in whatever form it may assume in the course of the litigation, and enables him to·follow the proceeds into the hands of third parties, without regard to any settlement before or after judgment. This is a statutory lien of which all the world must take notice, and any one settling with a plaintiff without the knowledge of his attorney does so at his risk."

Citing this case, and quoting from it, the Court of Appeals, in Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 493–498, 66 N. E. 395, again held that, as the Code now stands, it is unnecessary for an attorney, in order to protect his lien, to give notice of his claim to the other party.

As the case stands therefore, we have an award in plaintiff's favor against Dr. C. T. Parker, which by agreement they are entitled, as between themselves and Mrs. Parker to set off against awards for

approximately the same amount in Mrs. Parker's favor against them, paying her or suffering judgment for the slight difference in amount. Mrs. Parker's attorney has, however, a lien upon the award in her favor against plaintiffs which the parties cannot destroy by means of the agreed set-off, and which the court is bound to protect. If the award in Mrs. Parker's favor is substantially wiped out by the set-off, the attorney would be deprived of his lien. It can be preserved only by permitting judgment upon the award to be entered for the amount for which it has been found that the attorney has a lien, and limiting the offset to the remainder of the award in Mrs. Parker's favor. Of course, it will be the duty of the attorney to resort to his client, in the first instance, for the payment of his agreed compensation, and, while the judgment against plaintiffs will stand as security for the payment of that compensation until the attorney's claim is satisfied, he cannot compel the plaintiffs to pay him until he has exhausted his remedy against his client, or has shown that she is insolvent, and that it would be futile to pursue the claim against her. As between the plaintiffs and Mrs. Parker, the former are entitled to insist that she satisfy the attorney's claim in order that the award and judgment in her favor may be freed from the attorney's lien, and the set-off be carried out as she has agreed.

The present decree must therefore be so modified as to provide: That judgment may be entered upon the award in favor of Mrs. Susan Day Parker against the plaintiffs to the extent of 25 per cent. thereof, with interest, less the sum of $3,000 which the attorney and appellant Norton admits that he has received on account of his compensation, and that the said Norton shall have a lien upon said judgment for the full amount thereof, being the compensation to which he has been found to be entitled from his client Susan Day Parker, and for which he is entitled to a lien; that, as to the remainder of the award in favor of said Susan Day Parker against the plaintiffs, it be set off pro tanto against the award in plaintiffs' favor against Dr. C. T. Parker; that upon the payment to said Norton of the compensation due him from said Susan Day Parker, or other satisfaction of his lien upon the judgment in her favor, the plaintiffs be at liberty to apply at the foot of the decree for a set-off as against said judgment of whatever may then remain due to them upon the award in their favor against Dr. C. T. Parker, with costs of this appeal to the appellant Norton against the plaintiffs; and that the appellant Norton have leave to apply to the court for the enforcement of his lien upon satisfactory proof that he has exhausted his remedy against his client. All concur.