OPINION OF THE COURT
Lewis R. Friedman, J.
The routine processing of a settlement with a solvent defendant became a nightmare that haunts plaintiff’s attorney. The settlement check was received, the client’s endorsement obtained, the check deposited, the funds cleared, the settlement proceeds disbursed and the client left the country. Thereafter, the bank sent counsel a notice that payment of the settlement check had been stopped. Plaintiff moves for judgment of the settlement amount and costs. Defendant contends that it had a right to stop the check since there was an outstanding judgment in its favor against plaintiff.
The issue, which involves the collectability of judgments and the sanctity of settlement checks, appears to be one of first impression even though the fact pattern is common.
The facts are not in dispute. On August 25, 1991, after jury selection in this negligence case, the parties settled in open court as noted in the clerk’s record. The next day plaintiff forwarded the requested settlement documents, including general releases and a stipulation of discontinuance, to the city. On October 1, the city issued a settlement check for $25,000 payable to plaintiff and plaintiff’s attorneys of record. Plaintiff endorsed the check which was deposited in the attorneys’ escrow account on or about October 24. Counsel issued a settlement check to plaintiff on or about October 25. The city’s check was endorsed “payment stopped” on October 28, although plaintiff’s counsel was not notified until October 30.
The city’s position is based on a Parking Violations Bureau (PVB) judgment issued sometime prior to October 1, 1991 as a result of 37 unpaid summonses allegedly issued to plaintiff in 1987 and 1988.[1] Apparently there is coordination between PVB and the Comptroller’s office so that the city can determine, presumably with the aid of computers, those persons with outstanding PVB judgments who have pending claims against the city. The city contends that it received some notice *819 of the PVB judgment on October 4.[2] It is undisputed that an execution addressed to the Sheriff was issued by counsel for PVB on October 7. There is no proof that the Sheriff received the execution or levied on it. The city contends that, based on the execution, the Comptroller had a right to stop payment on the check it had issued at least a week earlier (the date the stop payment order was issued has not been disclosed to the court).

The execution did not give the city the right to stop payment.

There is no doubt that the settlement, entered in open court, was binding on both parties (CPLR 2104; Matter of Dolgin Eldert Corp., 31 NY2d 1, 8-10). Also, the law is well settled that PVB’s judgments are enforceable as money judgments issued in the Civil Court (Administrative Code of City of New York § 19-203 [e]; § 19-207 [a]). Plaintiff does not challenge the procedural steps which resulted in the judgments. There is also no question that settlement proceeds of a negligence action are subject to garnishment and levy in satisfaction of a judgment (CPLR 5201; compare, CPLR 5205 M).
Rather, the problem occurred because the city misunderstands the basic differences between an execution and a levy. An execution may be issued by a creditor’s attorney addressed to the Sheriff or a Marshal directing that official to levy on the property of the judgment debtor (CPLR 5230; Siegel, NY Prac § 494 [2d ed]). Although an execution gives a judgment creditor certain priorities in the debtor’s personalty (CPLR 5202 [a]), by itself, it gives the creditor no right to seize any property. On the other hand, a Sheriff or Marshal may levy on property, such as the settlement proceeds at issue here, "by serving a copy of the execution upon the garnishee, in the same manner as a summons” (CPLR 5232 [a]). Upon service of a levy, the garnishee, here the city, is authorized and directed to pay the funds to the Sheriff. (CPLR 5232 [a].) New York law contains no authority for self-help in the service of a levy; service must be made by an appropriate official, not the judgment creditor or its attorney, in order for it to be valid (Yeh v Seakan, 119 Misc 2d 681, 683). The procedure followed here also fails to provide the debtor with the notice mandated by CPLR 5222 (c) (CPLR 5232 [c]). The law is clear that since *820 the city failed to take the proper procedural steps to enforce its judgment, the city cannot rely on CPLR article 52.

Setoff did not give the city the right to stop payment.

Despite the city’s apparent reliance, in this court, on CPLR article 52, the Comptroller did not rely on the execution and levy when payment was stopped. Once the check was stopped no funds were paid to the Sheriff, or, apparently, to PVB. Clearly the city did not complete a levy and delivery. The city’s alternative argument that forcing it to pay plaintiff "would be most inequitable under the circumstances” suggests that it is relying on a right of setoff. Debtor and Creditor Law § 151 gives a debtor a right of setoff on the happening of certain events, including "the issuance of an execution” (Aspen Indus. v Marine Midland Bank, 52 NY2d 575, 582; Matter of Industrial Commr. v Five Corners Tavern, 47 NY2d 639, 646). The city appears to be claiming a right to set off its judgment against plaintiff with the amount it owes plaintiff.
Plaintiff’s counsel’s lien on the proceeds of the case precludes any setoff. Since an attorney’s charging lien under Judiciary Law § 475, and its common-law predecessors, comes into existence when the complaint is served, even before there are any proceeds, it is superior to the lien of any judgment creditor, even one levying on an execution (see, e.g., Sehlmeyer v Universal Oven Co., 118 AD2d 692, 694; Aetna Cas. & Sur. Co. v Atom Foreign Auto Parts, 116 Misc 2d 250). It has long been held that parties cannot offset judgments so as to defeat an attorney’s lien (see, e.g., Smith v Chenoweth, 12 NY Civ Pro Rep 89, 14 Daly 166, 18 Abb NC 349, 6 NY St Rep 232; Smith v Cayuga Lake Cement Co., 107 App Div 524; Webb v Parker, 130 App Div 92; Kretsch v Denofrio, 137 App Div 617; Fliashnick v Burke, 176 App Div 367). The lien must be honored even if the defendant did not have actual notice of the lien as it did here (Matter of City of New York [United States of Am. —Coblentz], 5 NY2d 300, 307; Cohen v City of New York, 63 Misc 2d 949, 952). Thus, setoff is ineffective to accomplish what was done here.

Equity did not give the city the right to stop payment.

Finally, the city justifies the result on the grounds that it is equitable. There is no equity in the city’s position, for the problem was caused solely by the city’s failure to follow the law. If a party creates its own "dilemma”, equity need not resolve it. The court fully understands the need for the city and its agencies to maximize collections from its debtors. If *821 the proper procedures were invoked, that result would have followed here. There were many effective steps the city could have taken without impairing the rights of third parties. At the outset, it could have checked its own records early enough to have avoided the problem. If the Torts Division of the Corporation Counsel’s office or if the Comptroller’s office had been aware of the old judgments before settlement of the case, settlement of the case could have been conditioned on payment of the judgments. That would be analogous to the city’s handling of debts to the Department of Social Services or Health and Hospitals Corporation. Of course the levy could have been served on counsel as a garnishee (CPLR 5201). That would have protected counsel’s rights and the city would have obtained immediate payment. If there were not enough time for the Sheriff to levy, PVB’s counsel could simply have served plaintiff’s counsel with a restraining notice, pursuant to CPLR 5221, which would have precluded any payment to the plaintiff before a levy. In short, the city was fully capable of collecting its PVB judgment before payment of money to plaintiff.
The result of the city’s conduct is that plaintiff’s counsel is "out” the amount of the client’s share of the recovery and cannot even collect the fee which Judiciary Law § 475 guarantees. The city contends that this result is just since plaintiff’s counsel should have waited longer for the check to clear. Under current regulations, the check of a governmental entity such as the city creates "next day” funds (12 USC § 4002 [a] [2] [C]; 12 CFR 229.10 [c] [1] [iv]; see, UCC 4-213 [5]; 12 USC § 4007 [b]). The Expedited Funds Availability Act made the funds available long before the notice of the stopped payment could have been received. That result follows because the Federal statute never contemplated that governmental entities would stop payment on vital checks. In this case the city did not even have the courtesy to call or write counsel once the stop payment order was issued, which would have obviated the current problem. In the absence of notice the attorney correctly disbursed funds to the now unavailable client. The failure to provide timely notice that the settlement check would be dishonored was the competent producing cause of the attorney’s harm. The only remedy now is for the court to compel the payment which was wrongfully withheld. The court will enter a judgment in favor of plaintiff’s counsel for the amount of the settlement, $25,000, together with any actual damages suffered by counsel as a result of the city’s *822 improper conduct. Plaintiffs counsel shall submit, with the judgment to be settled, an affidavit detailing the damages suffered.
As this court has previously held, the city is held to the same procedural standards as any other party (see, Artis v City of New York, 133 Misc 2d 629). A fiscal crisis is no excuse for high-handed governmental action and abuse of legal process.

. The city contends that "a judgment” was issued October 1, 1991. The listing attached to the instant motion apparently shows that the summonses at issue became judgments in 1987 and 1989. The city’s papers refer to 68 summonses issued to plaintiff. The number is misleading, since 31 were paid; thus, as the submitted listing makes clear, only 37 are "in judgment.”

. The document on which that claim is based is dated October 4, which appears to be some form of Comptroller’s worksheet; it conveys no meaningful information.